Good morning. May it please the court. Steve Mercer for Danny Thompson. Danny Thompson was convicted by a Maryland jury of robbery with a dangerous weapon and acquitted of that same jury in the same trial of the lesser-included offense of attempted robbery with a dangerous weapon. I suppose that they had noted to the trial judge that there was error. You're the trial judge. You tell the jury, if you found beyond a reasonable doubt that Mr. Thompson was guilty of robbery, then what? Therefore, you have to consider whether or not he's guilty of attempted armed robbery? What would a judge tell a jury at that point in time? Well, Your Honor, I think what the judge, if there was an objection by a defense counsel, as there should have been under Maryland law, first. I agree with you. Yes. The judge would recognize the invalidity of the verdict and the jury would have to resume deliberations. Now, at that point, what further instructions would the court give to the jury? One example may be to let the jury know that it found beyond a reasonable doubt and unanimously the same element or elements to both exist and not to exist and to reconsider the evidence and the defense in light of the instructions that were given. And I would note, Your Honor, that first, there is certainly a reasonable probability of a different outcome because the outcome here with an incompetent counsel was an invalid verdict. Well, let's make sure we agree on that. Invalid or inconsistent. And you know under federal law, you wouldn't be here because we don't consider this to be a problem. It's under the Maryland law, as Judge Flores pointed out. It recognizes an inconsistent. No objection is made. Okay? So that's a problem. You don't make an objection. But does that objection then waive the problem there? And then ultimately when you consider the point that you're now making as to whether you send it back to the jury, what are they going to come out with? It just does not seem plausible that a jury would do anything other than to just include the attempted one because they've already said he's guilty of robbery and which supports the felony murder. And the attempted one is, it's almost inconsistent to say you found attempted because you don't need attempted if he's robbed the place. I mean, that may be the layman's way that this was looked at. Your Honor, oftentimes I agree that an inconsistent, legally inconsistent verdict where the jury has returned a not guilty on the lesser included but has convicted on the greater offense, commentators in courts and the Supreme Court has often viewed that as perhaps favorable to the defense. Although where the data is on that, I'm not sure. But when we look at the particular circumstances. It would be true if you were going to send it separately for all of those different offenses, that it didn't find him guilty of this lesser one, so you won't be sent it separately because you basically have ascribed a different type of conduct that would support the underlying offense from the major offense that happened. So it could be like two offenses as opposed to one being assumed in the other. Well, Your Honor, here's the critical point in this case. The jury was clearly instructed about the level of intent that was required to prove an attempt to commit a robbery with a dangerous weapon. That is, under Maryland law, the same intent that the jury must have found to convict of a robbery. The instructions about the attempt were clear. The instruction about the robbery was not clear. And I'll add this. The defense in this case was that Danny Thompson did not intend to commit a robbery or intend to attempt to commit a robbery. And that wasn't just argument of counsel. There was substantial evidence that the state introduced, namely, my client's confession, a 17-year-old traumatized, hysterical youth with no prior contact with law enforcement, provided a detailed, incriminatory statement telling the police days after this event exactly what was in his mind. Exactly what he intended when this horrific and tragic event occurred. And that he never brandished a knife. He never threatened with a knife. He tried to sell a CD. He saw there was cash in a wallet. He went to try and snatch that wallet. There was a struggle. He tried to get away. And in a panicked moment, he fatally stabbed Mr. Santoy. That's the evidence in the light most favorable to the defendant. But in terms of what the jury could extrapolate from it, we're post-verdict now. So that's a whole different ballgame. Well, yes, we are post-verdict. And under the Strickland standard, we had invalid verdicts as a result of ineffective counsel. Those verdicts that were legally inconsistent would not— Invalid or inconsistent? I'm sorry, Your Honor? Make a difference of whether it's invalid or inconsistent. Well, it is invalid because they're legally inconsistent. And upon the request of the defense, the jury must resume deliberations. And our point here, Your Honor— Can you waive it if you don't make the objection? And that's what happened here. The answer to that question is, can it be waived if there's no objection? Yes, it can be waived. So it's not a subject matter, jurisdiction matter. There is a valid conviction for which you can challenge the validity of it by saying it's inconsistent. But it's only inconsistent once you don't make the objection. There's no validity problem. I see Your Honor's point. But when I say it's an invalid verdict, my point is that had competent counsel objected, the court would have recognized the invalidity of the verdicts and sent them back to the jury. The whole reason we're here is because trial counsel didn't. And there was a finding, a factual finding, by the state post-conviction court that there was no tactical reason to explain what counsel did. So what—doesn't that limit us? I mean, you know what Congress has done to the federal courts when it comes to reviewing these kind of matters that the state court itself has already been through and said there's no problem. In fact, it was the state court that says this thing is inconsistent. The federal court does not see it, you know, in terms of our law. And it goes to the state system, and the state comes out and says, well, we don't see this as being a problem that yields itself on the second problem of Strickland here. And then it comes to us. What gives us the authority now to go back and tell the state of Maryland, you don't know what you were doing when you—you didn't know what you were doing, and you erred in your court system by making this determination? Because it's an unreasonable application of clearly established law by the Supreme Court under Strickland. The state post-conviction court improperly applied the standard under Strickland, particularly with respect to the prejudice prong. There was waiver of the state law claim when counsel didn't object. You have to also say that the state court's decision was unreasonable. Yes. And if I—I apologize if I didn't say that, but that is the standard, that we must show not only that the state court erred in its application of Strickland, but that its decision was objectively unreasonable. Which takes us back to Judge Flores' initial comment. And the reason it was objectively unreasonable is because the jury in this case, based on substantial evidence presented by the defense, found unanimously and beyond a reasonable doubt that my client did not intend to attempt to rob Mr. Santoy. And at the same time, the jury found unanimously and beyond a reasonable doubt that he did intend to rob Mr. Santoy. But intent and premeditation can form in an instant second. It doesn't have to be in his mind minutes before. It can occur just as soon as he starts the act. Understood, Your Honor. And the court, I think, should—should point out that with respect to premeditation and deliberation for first-degree murder, the jury unanimously found my client not guilty, which is consistent with our—the theory of defense and the substantial evidence. So I agree, Your Honor, that intent can be formed in an instant. But here—and this case was all about intent. And the defendant's confession provided the substantial basis to show that he did not intend. And there was conflicting witness testimony as well. And the jury, when it considered all of these facts, found not guilty on two counts, guilty on two counts. The way the state court—post-conviction court resolved that was to speculate. Well, that is objectively unreasonable under Strickland. The different outcome was competent counsel object, the verdicts would not have been accepted, and deliberations would have continued, perhaps with some clarification. And that clarification we maintain. There's a reasonable probability that the jury would have agreed that there was no robbery when it was clear that the intent element that it had been instructed on with regard to the attempt was correct and that they had it right. I see a Judge Harris's question. Yes, I'm sorry, Your Honor. When you say that the post-conviction court in Maryland couldn't kind of speculate about these verdicts, are you leaving any room for a post-conviction court to do a sort of a normal prejudice analysis under Strickland? Why can't the court say, I'm not speculating, I'm just saying I'm looking at the evidence in the record and there's no reasonable probability that given this evidence, jury would have acquitted on attempt once it was explained? Yes, Your Honor. And we're not arguing structural error. We do have to make a showing of prejudice. And I agree that in an ordinary Strickland prejudice scenario, there is always going to be some level of speculation going on because you're asking, what would be the outcome but for counsel's error? And is there a reasonable likelihood? But he made a specific finding that the outcome would have been what it was. But, Your Honor, here's my point, though. What's different about this case than the ordinary Strickland prejudice analysis is that you have the jury returning unanimous verdicts on the same element or elements that they both exist and do not exist. And in a case like this, the unusual case, where the defense stands up and says, we do not dispute that Danny Thompson stabbed Mr. Santoy. We don't dispute that. But this is a case about intent and what intent did the client possess. And it wasn't just lawyer argument. It was based on my client's confession and what he told police and the conflicting statements of witnesses. Let's get a side of the other side here a little bit in their perspective. You have a lot of time left to come back and rebuttal, so we'll let you do that. Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Edward Kelly on behalf of the government. Threshold issue, I do believe in this case, is a revisiting of whether the certificate of appealability should have been issued. Did you file a cross-appeal on that? I did not file a cross-appeal on that, but I don't believe that that's necessary in this case. Why not? Because under the Miller L. decision of the Supreme Court, there's a required threshold inquiry into whether the standard for certificate of appealability has been met. And that can be raised on appeal without cross-appealing? That's what Miller L. says? It doesn't say it, but it doesn't say the opposite. Isn't the general rule that if you want to modify a judgment, you need to cross-appeal? All I'm arguing is that the standard for a certificate of appealability has to be met before this Court can exercise jurisdiction. No, no. There's a certificate of appealability. If it's defective, that might have been a problem back down in front of the district court. Did you argue to the district court when the petitioner moved to amend the judgment and include a certificate of appealability? Did you at that point go to the district court and explain why it shouldn't? No, I didn't. But, Your Honor, again, I won't belabor the point, but I would. Let's move into the facts. We can deal with that. That's a question of law. We'll handle that with you in terms of your briefs. But let's talk about the issue. Right. And I do think the – let me make sure I phrase it right because I think this is one of those cases we can listen to all the facts we want to listen to, but it really comes down to our interpretation of determination of whether a strict or second prong is satisfied. And the question here is you've got this, as your opposing counsel says, the jury has unanimously found robbery and unanimously found no attempted one. They say it's invalid, inconsistent, invalid whichever way. There's no objection. Clearly that was error on the part of counsel. She conceded that. She said she didn't know the case law, I guess is what I recall on it. So there's error. So the question is at this point in time we've got the state court having gone through this own analysis of this issue, the question we now face is that decision unreasonable in light of what this court's task is? It certainly is not unreasonable. And I would say, you know, the standard of review in this case certainly favors the government. The state court's decision must be an unreasonable application of clearly established Supreme Court precedent. Also, Section 2254E1 says state court factual findings are presumed correct unless proven incorrect by clear and convincing evidence. The state court in this instance found as fact that if the jury was asked to reconsider the verdict, it would have found beyond a reasonable doubt it would have issued a verdict on attempted armed robbery as guilty. That factual finding hasn't been rebutted by clear and convincing evidence. You know, counsel testified at the post-conviction hearing. She didn't allude to whether she thought, had she objected, the jury would have actually returned a not guilty verdict on the attempted armed robbery. There was no other evidence produced at the post-conviction hearing that the jury would have come back with a not guilty on the attempted armed robbery. But you said in every case in which you have an inconsistent verdict, that if there's no objection by counsel, the court as a matter of course could then say, well, no reasonable jury would have reached any different type of verdict. Well, I do, you know, what happens in these cases, there has to be an assessment of prejudice. And certainly the state court did that assessment in this case, examined all the facts, looked at what the facts. What's different about this case than any other case in which you would have this issue? It's not armed robbery and attempted robbery. What about other type of cases that the Maryland court has addressed dealing with the whole inconsistent verdict? You know, what's different about it? You see where I'm going with this? If that's the end result, the counsel doesn't object, then every case that comes up that can be said that the jury, no reasonable jury would have reached a different verdict because a greater offense was found. But the Maryland Court of Appeals found there's a problem here. And I take it, but it's only a problem if counsel objects. Right.  Right. Is that what you're saying? Because the, what happens is the recognition in the court of appeals is sometimes the, and I would argue in this case that the inconsistent verdict favors the defense. So it's the defendant who has to say, I want the jury to reconsider the verdict. What were the inconsistent verdicts in that Maryland Court of Appeals case? That was drug, it was a drug trafficking crime and a handgun, I can't get specific, but it was a drug trafficking and a handgun violation case. But what they found is the verdicts were inconsistent, but the fact of the matter is the defense can choose to accept the inconsistent verdicts because that is something the defense can choose to do because it often favors the defense. Did the Maryland Court say that? Yes, that's exactly what they said. That's why there's an objection requirement. And if you choose by not objecting, you therefore are choosing. Is that what you're going with? Right. If you choose to accept the inconsistent verdicts, you can no longer complain about the inconsistent verdicts. On the guys that, if the jury reconsiders the verdict, they may come back with a separate conviction, and in this case attempted armed robbery. You have a second conviction, which may have merged in this case, but certainly the argument by counsel was this was not an armed robbery case. And they said that based on the fact of intent. They also argued the aspiratation element wasn't satisfied. Let me ask you this question. If the jury had found guilt both on robbery and attempted robbery in this case, does the defendant face a greater sentence? He doesn't necessarily face a greater sentence, but he does have the additional conviction. Could he get a greater sentence as a result of that underlying charge also being found? Could he also get a greater sentence? Not a greater sentence. So are there instances in which there are inconsistent verdicts and the defendant could get a greater sentence if the inconsistent verdict is found also? Right. I would say the typical case is they will. Let me ask that question. In the case that the Court of Appeals had itself, had both of those been found, did that defendant possibly face a greater sentence because of that? It's not necessarily a greater sentence, but it is the additional conviction, and that conviction will survive. So you're saying in Price the defendant did not face a greater conviction if the jury had decided to resolve the inconsistency against the defendant. That's your position? Well, no, he faced an additional conviction. And a greater sentence, right, in Price? I thought that was the whole point of the Court's analysis in Price. I mean, is it your understanding that there was going to be no greater sentence for whatever it was, use of a gun? And Price could have been a different scenario because it involved a handgun. Right. In Price the defendant did face a greater sentence. There was a real strategic choice to be made there. Okay. But I would say there's still a – That's the point that Judge Harris is making where we're going with this. You're saying he faces a greater conviction. That's not really strategic. I don't think the defendant's worried about facing a greater conviction as opposed to a greater sentence. And in the Maryland Court of Appeals case, he faced a greater sentence with it. And therefore, strategically, you wouldn't do that. But in this case, why strategically would a counsel not make this objection in this case? Because the risk would be going forward with the attempted armed robbery conviction and the robbery conviction, if they wanted to challenge the robbery conviction specifically on appeal, then without the attempted armed robbery, and they defeated the armed – without attempted armed robbery, they could go up on appeal, challenge the armed robbery conviction, and then get the felony murder and the armed robbery conviction eliminated if they prevailed. But if they go – if the attempted robbery conviction's there, they don't have that option because they always – they would have – if the armed robbery conviction is knocked out, the attempted armed robbery would still exist. So there is a risk. Not much. That didn't happen. What's their theory on appeal where they can get one of them overturned but not the other? Like this seems like we're – The aspiratation theory, the aspiratation theory, that there was no aspiratation of the goods from the scene of the confrontation. Okay. There was an argument in this case that there was no aspiratation of goods from the robberies – from the scene of the robbery out. So that would have been an additional element that they had – they could challenge the armed robbery conviction on, but not the attempt. You know what's interesting about this case is we've got the – you were making this argument, well, it's a strategic decision on the part of counsel. This counsel admitted right out. She didn't even know the law. I agree. There's nothing strategic at all in this case here. You just didn't know. Right. And I'm not arguing that that was a strategic decision, Your Honor, because she didn't – because the post-conviction found – There's been law out there forever on this stuff, and here it is right there in front of us and just did not make that objection. Well, and on that issue, I would point this court to Kimmel v. Morrison where it said, it will generally be appropriate to assess counsel's overall performance in order to determine whether identified acts or omissions overcome the presumption that counsel rendered professional assistance. I'd also refer you to the extract – Why are you referring us to that? Are you – is it your position that there was no deficient performance in this case? I think the inaction in this case, particularly if you look at counsel's performance globally, there was no deficiency in this case because – and I would refer you to extract at 114 where the judge is complimenting counsel and says, I can't imagine anybody doing a better job than you did in this case. Globally, counsel did a fantastic job. Specifically, she didn't – wasn't informed of the price decision. Is that the position of the State of Maryland now, that if counsel generally does a good job, no particular error can form the basis of deficient performance? Quoting Kimmel, I was saying, you assess counsel's overall performance and her overall performance was excellent. So that is your position, that we should assess overall performance and no single deficient. But when – then you also examine single actions by counsel in the context of that overall performance. I don't know what we want to do with that. I mean, you could take that somewhere. Counsel could do just a fabulous job in other cases. But, Your Honor, my client is guilty. I just go ahead and convict him, and that's an error. He could have been wonderful everywhere else in the trial. That is a killer right there. Exactly. I don't know where you want to go with that. This is error. There's no question. And the district court found this error. The lady admitted – counsel admitted it was error. It's the second problem we're looking at on this here in terms of what it means to do it. And we go back. What I think is strong in your favor, at least to your point, is the fact that what would the jury have determined even if you sent it back and what the state court has already assessed from that level and then our very limited level of review, which we've got to say, Maryland's court is unreasonable. Right. That, to me, seems to be you and Kevin, your argument in that vein. I'm not making an argument for it, but I'm just saying this whole business about, you know, I think it sort of reaches to be able to go there. And I would agree. I do think my strongest argument is certainly on the prejudice component. Can I ask you just – I have one concern on the prejudice issue that I wouldn't – it would be very helpful to me if you would address it. So my concern is that the state court in finding – I would have – it would be one thing if the state court had said, as to prejudice, look, I'm looking at all of the evidence in the record. There's the witness who says there was the struggle, and he's yelling, give me the wallet, and the wallet's ripped in half. No jury, I am convinced, that in light of the evidence in the record, this jury would not have acquitted, would not have been reasonable to acquit even on robbery. There was the intent to use force. But there's another way of reading the state court opinion where really all the state court is saying, look, you've got these two verdicts, and obviously, given that they convicted on robbery, they'll convict on attempted because they convicted on robbery. And that strikes me as slightly more problematic because you do have two verdicts. You have to give each of them equal weight, and you could just as easily say, well, they acquitted on attempt, so once you explain this to them, they'll obviously acquit. So which way do you read the state court opinion? Well, I read it in the sense that he may be finding a fact that if the jury had been asked – It's more like a legal question. What do you think the state court was relying on? Did it look at all of the evidence in the record, or was it really just looking at these two verdicts? I think the state court was looking at all the entirety of the record and also the record of the post-conviction hearing. I mean, even Ms. Mead didn't say anything about whether this – Remember, it's the defendant's burden in state post-conviction proceedings to prove prejudice. The state has that – the presumption is with the state. And therefore, I don't think there's any evidence they produced that would overcome that presumption that prejudice was not shown. They – Based on all of the evidence in the record. Based on all the evidence in the record. I think the state court is entitled to deference that it did consider all the evidence in the record and concluded that – Well, why don't you argue the language that says that in federal court we shall not – is adjudicated on the merits of the state court proceeding unless the state court's adjudication, quote, resulted in a decision that was contrary to or involved in unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Right. That's the argument. That is my argument. If for some reason I've lacked clarity in today's argument, I – I've made in my brief, and in all habeas cases, particularly where the government has prevailed below, the standard of review is probably the most important and the strongest defense that the state has. As the Supreme Court said in Richter, a prisoner must show that a state court's decision is wrong behind any possibility of fair-minded disagreement. We know that the district court agreed with the state court's decision, so we already know that there's fair-minded agreement on this particular issue, and I don't think there's sufficient evidence in this case to hold otherwise. Thank you, Mr. Kelly. We'll hear from Mr. Mercer. You have a few minutes. Your Honor, here's why the state post-conviction court decision was unreasonable, because that is the heart of the case, and I turn to the joint record extract at 183, and I'll quote from the state court decision. This court agrees with the state and is convinced on the face of the verdicts returned that the jury indeed found beyond a reasonable doubt that petitioner committed each element of the crime of armed robbery. Stop. Stop. The jury also found on the face of the verdicts that Danny Thompson had not committed beyond a reasonable doubt attempted armed robbery or first-degree murder premeditated and deliberated. And I'll note, Your Honor, the inconsistency here was not about asportation. The inconsistency here, the same or similar elements that the jury both found to exist and not to exist, has to do with intent. And the intent instruction for the attempted robbery with a dangerous weapon was clearly laid out, which is a strong indicator when we consider that often inconsistent verdicts are the result of instructional error. But here, the clear instruction from the court about intent, which is what this entire case was about, was with respect to the attempt to commit an armed robbery with a dangerous weapon. Now, also focusing on why the state court decision is an unreasonable application of clearly established federal law as determined by the Supreme Court, under Williams v. Taylor, the question is, is it objectively unreasonable? Now, it's objectively unreasonable when we look, and this is similar to what occurred in Williams. Again, Joint Record Extract, page 183, quoting from the state court decision, the critical inquiry is whether the failure to preserve or raise a particular claim on appeal undermines the reliability of petitioner's conviction. It cites to Gross v. State, which in turn cited to Lockhart v. Fretwell, where some courts had altered the Strickland prejudice standard to say that even if you meet the Strickland prejudice standard, you still have to show unreliability. That is an unreasonable application of Strickland. And what it appears that the court did here, the state post-conviction court, that is unreasonable. And objectively so, was to simply put its thumb on the side of the verdicts that there was substantial evidence for, and to say, this is reliable. But at the same time, there's an inconsistent verdict that points exactly the other way, and for which there was substantial evidence. The court can't, the state court can't abandon Strickland and jump to a reliability analysis when under Strickland there's a showing of prejudice. Let's say we agree with you in some reason in that light. But couldn't we also look at it to determine if there's a reasonable application of it? That is, he's also convicted of felony murder. And they instructed, you can't find felony murder unless he's guilty of this underlying offense. And they find robbery. That looks like to me a pretty reasonable determination by the court, that they followed that instruction. Just like you got a problem with the other part of it, they got that one. And that's all that's there. Yes, Your Honor. Working backward from the felony murder conviction is a problem by the state post-conviction court, and here's why. Because there's no intent required for felony murder, as the court knows. The only finding is that there's a predicate finding, and here the predicate finding was either attempt, robbery with a dangerous weapon, or robbery with a dangerous weapon. Once the jury has found a robbery, then it's a fait accompli that there's going to be a felony murder conviction. So the inconsistency between the attempt and the robbery, which made those invalid, also clearly taints the felony murder. You've got the other elements of felony murder being established separately from it. But you've got to do this. That's just here. It's almost like it's a fait accompli if you do robbery that is attempted. Wouldn't that follow? Well, yes, or fait accompli, that not guilty on attempt is not guilty on robbery. Well, why can't it be said 12 jurors used their common sense, and they said, well, we convicted him of robbery. Why should we convict him of attempted robbery and let him go? Your Honor, I think we shouldn't I was a trial judge for almost 20 years, and I've seen it time and time again where they thought they were doing him a favor. Your Honor, we understand that juries can act with leniency towards a defendant. I don't know that we should presume that to be the case, that we have a lawless decision from the jury. I think the better way to view what happened here is that the inconsistency, which reflects unanimous verdicts on the same or similar elements to both exist and not exist on the issue of intent, it's really the product of instructional error. And when we look at the instructions as a whole, the instructions for the intent element for attempt are clearly and coherently set forth by the trial court. And so when you look at the particular circumstances here, this does not at all appear to be an act of leniency. Rather, the jury appears to have accepted the defense. Remember, there is a not guilty of the first degree murder premeditated and deliberated. And there was enough evidence here, Your Honors, that the trial court instructed the jury, if it found not guilty on felony murder and first degree premeditated deliberated, to go on and continue second degree specific intent to kill murder, depraved heart second degree murder, and involuntary manslaughter. And as to that last count, the defense conceded it was an involuntary manslaughter, that there was an unlawful act. But you see, the jury never got to reach those counts and to consider the heart of the defense. Thank you, Your Honor. The court acknowledges that you've been appointed to this case and I want to thank you for your service. We couldn't do these cases if we didn't get good lawyers to accept them by appointment. And we really appreciate your service here, as we do the service of government's counsel, too. We'll come down and greet counsel. We'll take a break. And we'll take a short break and we'll come right back.
judges: James A Wynn, Jr., Henry F. Floyd, Pamela A. Harris